```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 DESIREE WOODSON,

                    Plaintiff,             MEMORANDUM & ORDER
                                            24-CV-1542(EK)(LGD)
          -against-

 TARGET CORPORATION,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Desiree Woodson sues Target Corporation, alleging that she was subjected to a racially discriminatory receipt check after completing the store's self-checkout process. She brings claims under 42 U.S.C. §§ 1981, 1983, 1985(3),[1] 1986, and 2000a, as well as state-law claims under Section 296 of the New York Executive Law and Section 40 of the New York Civil Rights Law. She seeks $901,000 in monetary damages and $450,000 in punitive damages.

Target now moves to dismiss Woodson's amended complaint for failure to state a claim. For the following reasons, that motion is granted.

---

[1] Woodson pleads a violation of "42 U.S.C. 1985." Am. Compl. ¶ 29, ECF No. 15. Target's response assumes that Woodson brings a claim under Section 1985(3), *see* Def.'s Mem. in Supp. of Mot. to Dismiss 22 n.1, ECF No. 17-5, and Woodson does not object to that assumption.

## I. Background

The factual allegations below are drawn from Woodson's amended complaint, and are assumed true for the purposes of this order. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

On October 4, 2023, Woodson used a self-checkout machine at a Target store on Long Island to complete a purchase. Am. Compl. ¶ 4, ECF No. 15. A Target security guard checked Woodson's receipt after she had completed the self-checkout process. *Id.* ¶¶ 14, 19. At the time of the receipt check, all (or nearly all) of the eight self-checkout machines were in use, *id.* ¶ 15, and Woodson was the sole African-American patron at any of them. *Id.* ¶ 17. The guard did not check the receipts of any other self-checkout patrons. *Id.* ¶ 18. Woodson commenced this action in New York Supreme Court in February 2024. ECF No. 1-1. Target removed to this Court. ECF No. 1.

## II. Legal Standard

A plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.[2] A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health. Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). But a court need

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2

not presume the truth of "a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

**A. Woodson's Section 1981 Claim Does Not Plausibly Concern a Statutorily Enumerated Activity**

To state a claim under Section 1981, a plaintiff must allege that (1) she is a member of a racial minority; (2) the defendant intended to discriminate based on race; and (3) the discrimination concerned one or more of the rights enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). These include the right to make and enforce contracts, to sue and be sued, to give evidence, and to enjoy equal benefit of the law. *Id.*; 42 U.S.C § 1981.

The parties do not dispute that Woodson is a member of a racial minority. And regardless of whether Woodson has adequately pleaded intent to discriminate, she has not alleged a denial of a statutorily enumerated right. While Woodson does not explicitly invoke a specific statutorily enumerated right, *see* Am. Comp. ¶¶ 25-26, based on the allegations in her complaint, only two of those rights — the right to make and enforce contracts, and the right to the equal benefit of the law — appear relevant here. The Court addresses each in turn.

3

1.  <u>Make and Enforce Contracts</u>

Section 1981 protects the right of "[a]ll persons" to "make and enforce contracts" in the same manner as "white citizens." 42 U.S.C. § 1981(a). At oral argument, Woodson expressly waived any Section 1981 claim based on this right. Oral Arg. Tr. 16:14-17, ECF No. 24.

It is not surprising that Woodson took this approach. "[C]ourts that have addressed [S]ection 1981 claims in the context of retail transactions have held that after a purchase is completed, there is no continuing contractual relationship." *Bishop v. Toys "R" Us-NY*, 414 F. Supp.2d 385, 392-93 (S.D.N.Y. 2006) (collecting cases). Put simply, the weight of authority holds that "once the purchase is completed, no contractual relationship remains." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001).

Notwithstanding the plaintiff's election not to pursue this theory, it is worth noting that the majority view in the case law is difficult, at best, to square with the language of the statute itself. In 1991, Congress clarified that the phrase "make and enforce contracts" in Section 1981 included "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). The purpose of this amendment was to overturn the Supreme

4

Court's decision in *Patterson v. McLean Credit Union*, which held that Section 1981 does not extend to "postformation conduct." 491 U.S. 164, 177 (1989); *see Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994) (the amended version of Section 1981 now applies to "all phases and incidents of the contractual relationship"). Thus, in amending Section 1981, Congress appeared to suggest that Section 1981 should extend to precisely the type of conduct that the case law currently exempts from the statute's scope. Indeed, it is difficult to fathom how the "benefits" and "privileges" of contracting to purchase goods from a retail store would not include the ability to carry one's purchase past the store's threshold and into the parking lot.

Moreover, some cases espousing the narrower understanding of "make and enforce contracts" do so in reliance on *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002). *See, e.g.*, *Bishop*, 414 F. Supp. 2d at 392. *Garrett*, however, involved a markedly different fact pattern, in that the customer *had* carried the purchased item outside the store and, indeed, transported it all the way home before the retailer elected to call in law enforcement. *Garrett*, 295 F.3d at 101-03.

Ultimately, however, the Court need not decide this issue, given Woodson's decision to waive any reliance on the "make and enforce contracts" clause.

5

2.  <u>Equal Benefit of all Laws and Proceedings</u>

Section 1981 also protects the right of all persons to the "full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). To state a claim under the equal benefit clause, a plaintiff must "(i) allege racial animus; (ii) identify a relevant law or proceeding for the security of persons and property; and (iii) allege that defendants have deprived them of the full and equal benefit thereof." *Benzinger v. NYSARC, Inc.*, 385 F. Supp.3d 224, 235 (S.D.N.Y. 2019). In the retail context, plaintiffs bringing Section 1981 claims often allege a violation of state tort law, such as false imprisonment, assault, or battery. *E.g.*, *Pierre v. J.C. Penney Co.*, 340 F. Supp. 2d 308, 311 (E.D.N.Y. 2004).

Here, Woodson argues that the "relevant law or proceeding" that Target violated was Section 296 of the New York Executive Law, which provides a private right of action for, among other things, discriminatory practices by public accommodations. N.Y. Exec. Law § 296; Pl.'s Mem. in Opp. to Mot. to Dismiss 8, ECF No. 17-6.[3]

---

[3] Though it need not ultimately reach the question, the Court is skeptical that a plaintiff can satisfy Section 1981's nexus requirement by pointing to "the violation of a parallel anti-discrimination statute." *Benzinger*, 385 F. Supp. 3d at 235; *but see Drayton v. Toys "R" Us*, 645 F. Supp. 2d 149, 159-60 (S.D.N.Y. 2009) (finding that a Section 296 violation can support a Section 1981 claim). Indeed, the Supreme Court has made clear that "nothing in the text of [Section] 1981 suggests that [the statute] was

6

But Woodson has not plausibly alleged that *Target* (rather than the security guard) violated Section 296. The New York Court of Appeals has consistently held that an "employer cannot be held liable for an employee's discriminatory act [under Section 296] unless the employer became a party to it by encouraging, condoning, or approving it." *Totem Taxi v. N.Y. State Hum. Rts. Bd.*, 480 N.E.2d 1075, 1077 (N.Y. 1985); *see also Doe v. Bloomberg L.P.*, 167 N.E.3d 454, 457-58 (N.Y. 2021) (reaffirming *Totem Taxi*).[4] Woodson never alleges that Target encouraged, condoned, or approved the security guard's conduct, and therefore she cannot rely on a violation of Section 296.

Woodson also has not identified any "proceeding" of which she has been denied equal protection. The complaint does not allege that Target called the police, that it filed a criminal complaint, or that it initiated any kind of legal proceeding against Woodson. In similar circumstances, the *Pierre* court found that a suspected shoplifter had not been deprived of the equal benefit of a legal proceeding. *See* 340 F.

---

meant to provide an omnibus remedy for all racial injustice." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006). And this is precisely what Section 1981 would become if a plaintiff could bring a Section 1981 claim based on violations of a state's general anti-discrimination statute.

[4] Some district courts have suggested that Section 296 incorporates Title VII's imposition of *respondeat superior* liability. *See, e.g.*, *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1158-59 (E.D.N.Y. 2003) (collecting cases). These courts interpret *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998), to counsel such an approach. But nothing in *Quinn* requires a district court to construe Section 296 in tandem with Title VII. Nor does that case require (or permit) a district court to ignore the Court of Appeals' authoritative construction of that state law.

7

Supp. 2d at 311. Therefore, Woodson has not stated a claim under the equal-benefit clause.

\*         \*         \*

In sum, because Woodson fails to plausibly connect any intentional discrimination to an enumerated right protected by Section 1981, her claim must be dismissed.

**B.   Woodson's Remaining Claims**

Woodson conceded at oral argument that she has abandoned her remaining federal claims. Oral Arg. Tr. 16:18-17:5. The Court therefore does not address them here. Woodson also has two remaining state law claims. But when "the district court has dismissed all claims over which it has original jurisdiction . . . the district court need not exercise" supplemental jurisdiction. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). "Instead, the court may (and indeed, ordinary should) kick the case to state court." *Id.* Because all of Woodson's federal claims have been either dismissed or abandoned, her remaining state-law claims under Section 296 of the New York Executive Law and Section 40 of the New York Civil Rights Law are dismissed without prejudice.

**IV.   Conclusion**

For the foregoing reasons, Target's motion to dismiss is granted in its entirety. Dismissal is without prejudice. Woodson may amend her complaint within thirty days if she

8

believes that the deficiencies identified herein can be rectified by new pleadings.  If she does not do so, dismissal will be with prejudice.  The Clerk of Court is respectfully directed to enter judgment and close this case.

       SO ORDERED.

                                           /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge

Dated:    August 19, 2025
            Brooklyn, New York